Case number 19-4223. Jamie Marquardt v. Nicole Carlton et al. Argument not to exceed 15 minutes per side. Mr. Livingston, you may proceed for the appellant. Thank you. May it please the court. My name is William Livingston. I represent the plaintiff appellant Jamie Marquardt. I've reserved two minutes for any rebuttal. Mr. Marquardt. Thank you. Mr. Marquardt was terminated from his employment with the City of Cleveland Division of Emergency Medical Services on the basis of two posts that appeared on his Facebook page in February of 2016. He brought an action alleging, among other things, his termination violated his rights under the First Amendment. The district court granted appellee's motion for summary judgment on that claim, concluding that the post did not touch on matters of public concern and therefore were not entitled to constitutional protection. This court should reverse that judgment and remand the case back to the district court for further proceedings. The Supreme Court has employed a broad conception of what constitutes speech on a matter of public concern. It includes any communication that, when fairly considered, can relate to any matter of political, social, or other concern to the community. In addition, a subject of legitimate news interest amounts to a matter of public concern. That is a subject of general interest and of value and concern at the time of the publication. Now, the court has held that in determining whether speech amounts to a matter of public concern, the court must determine the content, form, and context of the given statement as revealed by the whole record. Notably, the arguably inappropriate or controversial nature of the speech is irrelevant to that analysis. Mr. Livingston, does the fact that this was posted on Facebook have any relevance to this case or this appeal? If so, how is it relevant? Yes, thank you, Your Honor. I believe it does because it was made on a social media platform that was made for public consumption. I think it demonstrates that it was a part of the ongoing debate of the Tamir Rice incident. What about the fact that it was on a private setting? Does that make any difference here? Does that change the public nature of it? Because I don't think it was open to the public, was it? Well, it was open to people who were friends of Mr. Marquardt, and it's a little unclear on the record whether friends of friends could see the post, but it's undisputed that there was an audience for the post who did comment on it and did discuss it. Are you saying if there's any audience for communication, that's enough to satisfy the public concern element? Well, I would say that it goes to the fact that it is a matter of public concern, and I would cite this court's decision in Chappelle v. Montgomery Fire Department, where this court recognized that it is not essential that the speech actually be heard to a wide audience. It's more the fact that the content of the speech touches on a matter of public concern. Well, tell me this. Your client, or at least the post, said he was glad that Tamir Rice was dead. Is that a matter of public concern or just private interest? Well, what I would say, Your Honor, is that the post must be judged on their entirety. You can't parse and parcel certain statements. In fact, in Rankin v. McPherson, the Supreme Court said that a certain statement cannot be divorced from its context or isolated from the record. The record also demonstrates that Mr. Marquardt was terminated for the entirety of the post, not any specific statement. When you look at the post in their entirety, I think it goes beyond just a matter of private interest, but it goes into the very debate about the Tamir Rice incident, the police's response, and the appropriateness of the actions. What part of the language in particular do you think is a matter of public concern? Sure. Well, if I could go into the post directly, the first sentence begins, let me be the first on record, and it goes on to express the author's belief that Rice should have been shot for his actions. So in that very first sentence, Your Honor, the author is expressing his belief that he agrees with the officer's actions and that he recognizes that that opinion is in contrast to the popular belief. The second sentence then describes what Rice was reported to have been doing that led to the police response, namely pointing what appeared to be a gun at patrons in the park. The third sentence then describes that the author is upset that he basically didn't get to engage in vigilante justice. And then when you look at the second post, which is in response to a reader of the first post, he asks that reader to put himself in the shoes of someone walking through the park that day who believed Rice was pointing a loaded gun at him. And he describes what he believes the city of Cleveland's perception to be of Rice, that as a hero, and he obviously expresses his disagreement with that assessment. So when you look at the post in their entirety, we submit that any one of those statements could touch on a matter of public concern, and that's all that's necessary for the speech itself to amount to a matter of public concern. So if a post is 95% a private matter and 5% a matter of public concern, your conclusion is that that entire post reaches a matter of public concern or that's enough to Well, thank you, Your Honor. What I would suggest is that the court has never engaged in a quantitative analysis. It's always engaged in a qualitative analysis as to whether any amount of the speech touches on a matter of public concern. And for instance, in Connick v. Myers, the speech at issue was a questionnaire that had been circulated and included 14 questions. Only one of those questions the court found amounted to speech on a matter of public concern, but that was enough. So yes, I would say that so long as any portion of the speech touches on a matter of public concern, that meets the first threshold inquiry. Is each post a separate communication? Well, I would say that they need to be looked at their entirety because the record demonstrates that the one, I would say, Connick mandates that the analysis include both posts, but I'd also say that the record demonstrates that Mr. Marquardt was terminated for the post in their entirety, both the first post and the second. Well, suppose Mr. Marquardt had had two conversations with people, one in which he talked about purely private things, and the other one he talked about public things, and he was then fired based on both communications. Would his firing then give rise to a claim? Well, I believe so, Your Honor, because Connick mandates that you look at the entire record to determine the content, form, and context of the posts, and the Connick test applies to the speech for which the employee was terminated. The record is clear that he was terminated for the content of both posts. An analogous case to the speech presented in this case occurred in Rankin versus McPherson. In that case, the Speaker expressed her desire for the President of the United States to be killed. After an attempt on the President's life failed, she told a coworker, and I'm quoting, if they go for him again, I hope they get him. And the Supreme Court found that that amounted to speech on a matter of public concern. In that case, the President was still in office, right? Yes. So in this case, these comments were made over a year after Mr. Rice, unfortunately, was shot and killed. So how do we, I mean, at some point, does something no longer become a matter of public concern because the clock has run out and it's sort of newsworthiness? Well, what I would say is first, Your Honor, the record makes clear that the Kamir Rice incident was very much in the public conscience at the time of the post, and that comes from deposition testimony of a paramedic, Gregory Hyde. But what I'll also say is that in Chappelle, this court found that the fact that speech may come late in the debate does not remove it from being speech on a matter of public concern. And so I would say that, first off, the record demonstrates that it was part of the ongoing debate, but also just because you're not first in time, I don't think that removes it from the sphere of public concern. Was it part of the debate because of the fees they wanted to charge the family, I think? Well, I would certainly say that it's still a matter of public concern at the time of the post simply because it was two years after his death. I don't think that the debate stopped, but I would also say that there was ongoing litigation between the Rice family and the city of Cleveland that was not resolved until April of 2016, two months after the post. So I think the incident itself was very much in the public conscience as Mr. Hyde testified to it as deposition. But what I would note in Rankin is that the speech, while not refined political commentary by any means, and nor was it found to be mere political hyperbole, was still a matter of public concern. And the fact that the speaker expressed her personal interest in the president being killed did not transform that speech on a public matter to the expression of purely private interest. And more recently, the Supreme Court in Snyder v. Phelps reaffirmed the principle that the controversial nature of speech is irrelevant to the analysis of whether it's speech on a matter of public concern. In that case, you may recall members of the Westboro Baptist Church held signs outside of a fallen Marine's funeral that read things like, you're going to hell, God hates you, thank God for IEDs, God hates the USA, and hope in hell. And the court held that the content of the speech, quote, plainly relates to broad issues of interest to society at large, rather than matters of purely private concern. And the court held that the speech could be read as highlighting the political and moral conduct of the United States and its citizens, issues surrounding homosexuality and scandals in the Catholic Church. All of those things, when read broadly, were matters of public concern. And the fact that some of the messages on the signs appear to be directed directly to the Marine and his family did not change that analysis. So we submit that Rankin and Snyder compels the conclusion that the speech in this case is on a matter of public concern. And where do you think the district court went wrong in holding it is not a matter of public concern? For a number of reasons, your honor. And first, I would say that the district court did not cite or discuss Rankin or Snyder. It relied on two cases from this court, the first being Danbrot. And in Danbrot, a college basketball coach was terminated after he used the N-word as a motivational tool for his players. And this court found that using the word in that context to get his basketball players to play harder was not of any social value or interest to the community. But it did pose a useful test. And it said that you can determine whether speech amounts to a matter of public concern by imagining someone standing on a soapbox in the community and expressing that speech to the public and passing it out in the public square. Obviously, Danbrot's speech would not qualify. But here, it's very easy to imagine the speech at issue meeting that standard. Facebook is essentially a modern-day public square where people can debate subjects of interest to the community. And the record demonstrates the comments similar to the posted issue were published on websites like Cleveland.com response to articles about Tamir Rice. So we submit that the posts are part of an ongoing debate of the Tamir Rice incident. And we're certainly not just a fleeting reference to the incident itself. The other case the district court relied on was Farhad v. Jaffke. In that case, a school custodian sent a letter criticizing his coworker and called her mentally ill and used other abusive language. And the court found that the speech was just quintessential employee beef rather than addressing a matter of public concern, even though there was a vague allegation of collusion that he referenced. But again, you could apply the Danbrot test in that case and decide that, clearly, the problems that the plaintiff employee was having with his coworker did not amount to something that would be of value to the interest if he was speaking on a soapbox. Can I ask you before you finish? I'm sorry. I think your time is almost up. Do you agree that if you prevail on this issue, we still have to remand back to the district court? And there's quite a bit of work to do still in the district court in terms of balancing the interest in the speech against the city's interests in operating an EMS service? Absolutely, your honor. I would note that- Judge Oliver didn't resolve that issue, correct? Correct. This is a court of review, not of first impression. And so this court should remand the case back to the district court. May I finish my response? Yes, you may. Thank you. To determine whether the speech passes the Pickering balancing test. And I would note that that's what this court did in Banks v. Wolf County Board of Education, where the district court did not reach the balancing test Pickering and remanded the district court to do so on that ground. Thank you. Thank you, Mr. Livingston. Mr. Vance? Yes, thank you, your honor. May it please the court. I am David Vance and I represent the appellees in this case, the city of Cleveland, Ohio, and the commissioner of his division of emergency medical services, Nicole Carlton. This court should deny Mr. Marquardt's appeal because his Facebook posts expressing his happiness that a 12-year-old child was dead and disappointment that he didn't get the opportunity to kill that child do not address matters of public concern. To conclude otherwise would expand the scope of first amendment protection to virtually all private speech, so long as it is a more analogy of the 95% personal, 95% not related to a matter of public concern, than this little 5% that may be related to a matter of public concern. That's exactly what Mr. Livingston and Mr. Marquardt are looking for here. And that is not permitted, whether it be through Waters, through Jopki, or through any of the numerous other decisions that have followed Connick. There are three issues on appeal, but there's only one question that this court must answer. That question is whether Mr. Marquardt's speech is on a matter of public concern. To answer that question, the court must look to the content, form, and context of the Facebook posts. As the court stated, this court stated in Housie v. Maycomb, content is generally the most important. But Mr. Marquardt has virtually ignored the content of his posts from the outset of this case. Even today, he will not read the words from the Facebook posts. Instead, he recharacterizes them into something that they are not. But you need to focus on the words. Those words are heinous statements such as, Tamir Rice should have been shot. I am glad he is dead. I am upset I did not get the chance to kill the little criminal fucker. Mr. Vance, how do you distinguish this though from the Snyder case, where there were also very extreme statements made, and yet deemed to be protected by the First Amendment? So the Snyder case, I think you have got to start again with the content, form, and context. This is something that the Westboro Baptist Church had done for 20-plus years. They are more than 1,000 feet. They are on public land. They are not even within sight of the funeral procession. And not only are they including some of those signs that you referenced, but more generically, they are including signs like priests rape boys. And they are anti-military signs. They are anti-Catholicism signs. Things that advance the public debate as to these particular types of topics. While they may be heinous, they at least add to the public discourse. Mr. Marquardt's statements as to his personal interest that he wishes Tamir Rice was dead, that he is glad he is dead and is disappointed he did not get the chance to kill Tamir Rice, do not amount to the same type of way. Another way to look at that case is in Snyder, I do not think the serviceman whose funeral was involved was an individual of public interest or public concern. Tamir Rice was no ordinary teenager. And his killing was certainly significant local news, but also national news as John Rice or someone no one had heard of. But you do not think it is fair to say Tamir Rice was a public figure in the sense the way that word is used in the First Amendment a year after his shooting? I would agree that it is fair to say that in some sense Tamir Rice was a public figure, particularly here in Cleveland, Ohio. The question, though, that you have to go to is, what is the content of the speech, public figure or not? Even if you go to Rankin, if you have President Reagan or then President Reagan, who clearly is a public figure, one of the highest public figures in the United States, and much more so a public figure than Tamir Rice could ever be, the court there actually suggested that if this was a legitimate threat as to President Reagan's life, that would not be protected speech. How do you distinguish that from the fact that if they go for him again, I hope they get him? Well, that is sort of similar somewhat, isn't it, to what Marquardt said here, and yet the Supreme Court held it was a matter of public concern. So while content is typically the most important in that particular case, the U.S. Supreme Court really focused on context. The context of that particular statement was what was supposed to be a private conversation between two coworkers. As part of that conversation, they were discussing then-President Reagan's administration's recent cuts to social welfare benefits. The recent assassination or the then-recent assassination attempt on President Reagan came up, and the employee in question did state exactly what you stated, Judge Gilman, if they go for him again, I hope they get him. She immediately admitted that was a joke. The court determined that there was no legitimate threat there. So there's context around the statement here from Mr. Marquardt. Mr. Marquardt is not in a, you know, a message board or a group about Tamir Rice. He's merely posting on his Facebook page that I'm glad a 12-year-old boy is dead and I'm disappointed I didn't get the chance to kill that child. I hear you say that, but I don't read that as narrowly. They're also in those posts about the police officers were justified in shooting Rice and that Rice didn't deserve to be a hero. Those are in those remarks as well, aren't they, on the posts? So the police officers and the police department is not mentioned once in the post, sir. That would be something that Mr. Livingston and Mr. Marquardt would have you believe or would like you to believe that that was somehow the intent behind the post, but the focus has got to be on the posts themselves and not on the, you know, what they wish to be the intent behind the post. In fact, Mr. Marquardt is incapable, at least according to Mr. Marquardt, to state exactly what the intent of the post were, as Mr. Marquardt claims he didn't actually make the post. And if you were, if when Mr. Marquardt was asked, what do these posts make you, you know, what do these posts look like to you, he actually acknowledges that the post looked like he wants to kill a 12-year-old boy. Well, they certainly say, they certainly say that you would want to look at him as a hero. Cleveland sees this felony hood rat as a hero. That's right in the post. Why isn't that a matter of public concern? Yes, Mr. Gilman. So you have to go to Waters v. Churchill, and Waters v. Churchill makes very clear that the conic test must be applied to the speech for which the employee was fired. While Mr. Livingston repeatedly stated that Mr. Marquardt was fired for the totality of the post, there's no support for that in the record. The only thing that he ever cites you for that proposition is the discipline paperwork, the record document number 22-11. When Commissioner Carlton actually testified about Mr. Marquardt's discharge and what the reasons were for his discharge, she made very clear that the speech for which Mr. Marquardt was discharged included the two statements, Camille Rice should have been shot, I'm glad he is dead, and I'm upset I didn't get the chance to kill the little criminal fucker. Those are the two statements per Waters v. Churchill that the court should be applying the conic test to. As Commissioner Carlton stated, that is the language for which the division of EMS, the city of Cleveland, discharged Mr. Marquardt. So while I appreciate and understand the second post where it relates to some ghetto rat, the city looking at Camille Rice as a hero, those were posts that were not considered as part of the discharge decision, your honor. Mr. Marquardt asked this court in essence to craft a new test. His test is basically whenever an employee speaks outside of work on matters unrelated to work. Did Judge Oliver say the record is the way you, I thought Judge Oliver looked at all the posts and just took them, you're cutting it pretty thin about what the city did and didn't consider. I don't think Judge Oliver read it that way, did he? I mean, I thought he just took it all and said, I'm looking at all this together, but I think it all amounts to a private concern. Judge Oliver certainly included the entirety of the post within his decision. Yeah, that's pretty important. Sure. Now, while Judge Oliver may have included the entirety of the post, the argument was made to Judge Oliver in the underlying decision as part of the underlying case that those were the decisions or those were the actual words for which Mr. Marquardt was discharged. Now, in terms of what the test that Mr. Marquardt... He didn't cut it that thin in his opinion, did he? He didn't necessarily say that it was the totality of the post for which he was discharged either. It was kind of an open issue, so to speak. So, in terms of the test that Mr. Marquardt would ask this court to craft, again, it's whether an employee speaks outside of work, whether that speech is unrelated to work, so long as it touches on any newsworthy topic, regardless of how remotely, then it must be protected by the First Amendment. This test must fail for three reasons. First, it's not the actual test. The actual test requires three prongs. First, the speech must be made as a citizen. Second, it must be on a matter of public concern, and only if those first two prongs are met do you get to pickering and balancing. Now, Mr. Marquardt's test in essence conflates the first two prongs. In conflating the first two prongs, he does away with the content form and context analysis, which is so critical. The Supreme Court rejected a very similar argument in City of San Diego v. Roe. In that case, as you may recall, there was a City of San Diego police officer who argued before the Ninth Circuit, and the Ninth Circuit actually adopted this, that since his speech, which related to pornography, he was distributing pornography outside of work, was not a workplace grievance. It was off-duty, and it was unrelated to his employment. It was protected by the First Amendment. The Supreme Court very clearly said, well, since your activities do nothing to inform the public about any aspect of the police department's functioning or operation, it's not on a matter of public concern. The same is true here. Mr. Marquardt's speech, his gladness that a child was dead, disappointment that he didn't get to kill that child, does not inform the public. It's funny, you want to mention the derogatory words, you never want to mention the child's name, and I think that's the whole point, which is it wasn't just any child, it was a child who was sort of tragically killed in a manner that became a national news story. And Marquardt is commenting on exactly the means by which he was killed, which is quite debatable in the public about whether it was appropriate or not, wishing he was the one who did so, and so wishing he was the one who engaged in these very controversial acts. And so I think it's just quite difficult to put this in the same box as generic pornography or something else where, you know, there's an individual aspect to it that's quite newsworthy. And that brings me to the third part of the reason why Mr. Marquardt's test must fail, is Mr. Marquardt repeatedly in his briefing, on three separate occasions, talks about how these posts are completely unrelated to his work. So while Mr. Marquardt is espousing his views that he is glad Tamir Rice is dead and disappointed he didn't get to kill him, he fails to recognize or acknowledge that his co-workers, the division of EMS employees, actually responded to the Tamir Rice shooting. They worked to save his life. So while his co-workers, and imagine for a moment if Mr. Marquardt was the individual that had actually responded to that call. So Mr. Marquardt is talking about how he's glad this person is dead when he has a sworn obligation and duty to try and attempt to save this child's life. The speech is also related to his employment in the sense that it was indeed made on Facebook, to whom he is friends with various people that he works with, his co-workers. So they received that speech nearly immediately, as well as other people that he did not work with, or did not, was not friends with on Facebook, that he worked with also received that speech. They immediately reported it to their supervisors. Their supervisors had safety concerns relative to that speech and ultimately raised it up the flagpole to Commissioner McArdleton. Which I think is... I don't know about the Pickering balance test though, and we're not dealing with that. We're just concentrating on whether it's a matter of public concern. All your arguments might be good reason why you may win on the Pickering test, but that's not for us to decide, is it? Well, it relates in the sense that this is part of the test that Mr. Marquardt is suggesting that this court applied. Much like the officer in the city of San Diego was basically, hey, this is completely unrelated to my job. Therefore, it must be on a matter of public concern. So for that particular reason is why it's relevant in this context. Going back to Waters v. Churchill, it's critical that you focus on the speech for which Mr. Marquardt was discharged when applying the conduct test. As this court made clear in Rogers v. Banks, the speech for which the employee was discharged needs to be analyzed in the context of whether or not the information is needed or appropriate to enable members of society to make informed decisions about the operation of their government. I've yet to hear Mr. Marquardt explain how his particular post, including the two posts that have been reiterated, enable the members of society in any way, shape, or form to make decisions about the operation of their government. His content here with clear racial undertones relative to his gladness that Tamir Rice is dead and upset that he didn't get the chance to kill that child do not speak to the operations of the division of EMS, his employer, or the city of Cleveland. Mr. Marquardt has not- I mean, aren't the officers employed by the city? And isn't the whole point that this arguably was a racial- not taking a side on that at all, but the whole underlying point is that this was arguably potentially racially motivated. And it's hard to say in 2020 that those issues aren't issues of national concern, issues of the operation of government. Not taking a side one way or the other just seems like a fair observation. Focusing strictly on the speech at hand, he makes no mention of the police officers. He merely is espousing his personal belief that Tamir Rice should have been killed and that he's upset he didn't get the opportunity to do that. To use Mr. Livingston's words, that he didn't get the opportunity to engage in vigilante justice. He doesn't talk about the police officers. He doesn't talk about, you know, gun control or law enforcement training or anything about that. He merely states his is killed. If you look at Farha, the question is not why the employee spoke, but what was said. And what was said here is, you know, his very personal beliefs as to Tamir Rice. Again, it does not provide any sort of information that allows the public at large- I see I'm out of time, if you mind, 30 seconds, just to wrap up. Kyle, quickly, please. Thank you, Your Honor. So, Commissioner Carlton said it best during her deposition, EMS is here to help people. And Mr. Markworth's upset that he couldn't kill a child. His personal desire and disappointment that a child- that he wasn't able to kill that child do not move the public debate forward in any meaningful way. For these reasons, the court should deny Mr. Markworth's appeal in its entirety. Thank you. Thank you, Mr. Vance. Mr. Livingston, do you have rebuttal? Yes, thank you, Your Honor. I would note that we agree that the conic test is to be applied to the speech for which the employee was terminated. And in paragraphs 27 and 28 of the complaint in this case, the entirety of the posts are outlined demonstrating that Mr. Markworth was terminated for the entirety of the posts. All the content of the posts are listed there and the defendants admitted that he was terminated for the entirety of the post. So, the record substantiates the fact that he was terminated, not for any specific section of the post, but the speech in its entirety. I would say that the cabin view of the post in this case and the argument submitted by Applebee's cannot be reconciled with Snyder or Rankin. Neither in Snyder, or especially in Rankin, they didn't discuss any specific employment issue or, you know, anything in connection with their job duties. Rather, it addressed broad matters of public concern that the Supreme Court found plainly related to issues of import to the community and where speech amounted to matters of public concern. So, Can you just briefly respond here? Your friend on the other side made the point that maybe the city only actually picked out a couple of sentences from these broad posts as the basis for the termination and that somehow those aren't part of the broader public issue that might be tied up in the post? Yes, Your Honor. I apologize if I wasn't clear, but I would say that they admitted in their answer to Plaintiff's complaint that he was terminated for the entirety of the post, not any specific section. But I would also note that in Rankin, specifically in footnote 10, the court said that a public employer may not divorce a statement made by an employee from its context and use that statement standing alone as the basis for discharge. So, I think that's what the Applebee's are trying to do in this case, but both as a matter of fact from the record and as a matter of law, that's not the proper analysis. Unless there's any additional questions, I'll submit my argument and rest on my brief. Thank you, Mr. Levinson, and thank you to both counsel. The case will be submitted.